IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:15-CV-109-FL

THE HUMANE SOCIETY OF THE            )
UNITED STATES and SOUND RIVERS,      )
INC.,                                )
                                     )
                 Plaintiffs,         )
                                     )                    ORDER
          v.                         )
                                     )
THE HANOR COMPANY OF                 )
WISCONSIN, LLC,                      )
                                     )
                 Defendant.          )

This matter is before the court on defendant's motion to dismiss plaintiffs' complaint for

failure to state a claim. (DE 15). Also before the court is plaintiffs' motion to strike. (Id.). Issues

raised are ripe for ruling. For the following reasons, the court grants plaintiffs' motion and denies

defendant's motion.

**STATEMENT OF THE CASE**

On August 1, 2015, plaintiffs filed suit pursuant to the citizen suit provision of the

Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004(c),

alleging violations of EPCRA by defendant at its concentrated animal feeding operation ("CAFO"),

known as Shellbank, located outside of Rocky Mount, North Carolina. Plaintiffs assert as the

solitary cause of action a failure to comply with emergency notification requirements of EPCRA.

In response, defendant filed the instant motion to dismiss for failure to state a claim (DE 15),

relying upon the following:

1.    2005 consent agreement and proposed final order ("Shellbank Agreement" or
      "Agreement") between defendant and Kronseder Farms, Inc. and the Environmental
      Protection Agency ("EPA") (DE 15-1) ("Exhibit A");

2.    September 2012 fact sheet produced by the EPA to describe the history of EPCRA
      (DE 15-2) ("Exhibit B");

3.    January 27, 2006 final order issued by the Environmental Appeals Board ("EAB")
      of the EPA ratifying 20 consent agreements and proposed final orders, including the
      one at issue in the instant case  (DE 15-3) ("Exhibit C");

4.    2008 EPA rule providing a reporting exemption from certain EPCRA notification
      requirements (DE 15-4) ("Exhibit D");

5.    January 13, 2011 EPA press release announcing emissions data from a study on
      animal feeding operations (DE 15-5)  ("Exhibit E");

6.    February 17, 2012 EPA memoranda requesting the Science Advisory Panel of the
      EPA review and comment on proposed emissions estimating methodologies that
      resulted from a two-year study (DE 15-6) ("Exhibit F");

7.    July 15, 2013 letter from EPA's acting administrator to the Chairman of the Science
      Advisory Board expressing appreciation for its review of proposed emissions
      estimating methodologies for broiler-animal-feeding operations and lagoons and
      basins at swine and dairy-animal feeding operations; (DE 15-7) ("Exhibit G"); and

8.    September 21, 2015 complaint for declaratory and injunctive relief filed by several
      organizations, including plaintiff Humane Society of the United States, in the United
      States District Court of the District of Columbia  (DE 15-8) ("Exhibit H").

Plaintiffs responded in opposition to defendant's motion with reliance on testimony by affidavit of a myriad of individuals.[1] Plaintiffs separately move to strike six of the eight exhibits[2] upon which defendant relies in support of its motion on grounds these exhibits constitute "extra-complaint exhibits" and cannot be considered in the context of a Rule 12(b)(6) motion. (DE 19). Defendant opposes that motion on grounds the subject documents are public record.

## STATEMENT OF THE FACTS

The facts, taken in the light most favorable to plaintiffs, are as follows:

On or about July 15, 2005,[3] defendant executed the Shellbank Agreement relating to then-ongoing violations of EPCRA at Shellbank, which agreement was subsequently ratified by the EPA March 24, 2006. (See Shellbank Agreement). The Shellbank Agreement provides that it resolves defendant's civil liability and creates a covenant not to sue for "certain potential violations of ... EPCRA", including for civil violations of EPCRA § 304 resulting from air emissions of ammonia. (Id. at 3, 17-20). This release and covenant not to sue are conditional on defendant's compliance with the requirements of the agreement. (¶ 28, DE 15-1). The requirements can be segmented into three parts: 1) a civil penalty; 2) a notice of continuous release to be provided to the appropriate authorities within 120 days of the execution of the consent agreement; and 3) an additional set of

---

[1] In order to establish standing, plaintiffs rely on affiants Sandra Dunn (DE 20-2), Heather Deck (DE 20-3), Michael Greger (DE 20-4), Erica Geppi (DE 20-5), Eric Swafford (DE 20-6), Robert Hudkins (DE 20-7), and Harrison Marks (DE 20-8).

[2] Plaintiffs seek to strike exhibits B, C, E, F, G, and H. (DE 19).

[3] While the complaint lists the Shellbank Agreement as being entered into on January 31, 2005, (¶ 65, DE 1), this was the date that the *proposed* order was published in the federal register for comment. (Ex. C at 1, DE 1-3). Defendant actually signed the Shellbank Agreement July 15, 2005, and the EPA signed March 24, 2006, when the decree was affirmed. (DE 15-1, 3).

3

requirements that trigger after the EPA publishes the Emissions-Estimating Methodology ("Methodology"). (See id.).

The Shellbank Agreement further states "EPA's inability to publish an Emissions-Estimating Methodology for a particular type of Emission Unit in Attachment A within 18 months shall have no effect on any other deadline or provision of this agreement for any other type of Emission Unit listed in Attachment A." (Id.). While the Agreement otherwise provides for ongoing violations "during the pendency of the nationwide monitoring study," this provision contemplates violations of the Clean Air Act, not EPCRA. (Id. at ¶ 35).

Shellbank presently releases in excess of 100 pounds of ammonia per day. (¶ ¶ 56, 57, DE 1). On July 10, 2012, and again on January 16, 2015, plaintiffs provided defendant with written notice regarding ongoing regular releases of ammonia from the Shellbank facility, and defendant's obligation to report those releases under EPCRA. (¶ 6, DE 1). However, Shellbank has not submitted any notification of releases of ammonia to the authorities required under EPCRA. (¶¶ 62-64, DE 1).

Plaintiffs assert that, at the time of the complaint, defendant has not filed the notices required under § 304 of EPCRA, and the EPA has neither published an Emissions-Estimating Methodology nor taken steps to enforce the notice requirement of the agreement. (¶ 80, DE 1).

## COURT'S DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint

4

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In addition, a motion to dismiss under Rule 12(b)(6) may also be appropriate "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

Generally, in evaluating a motion to dismiss under Rule 12(b)(6) the court may not look beyond the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). The court may consider documents attached to the motion to dismiss if they are integral to and relied upon in the complaint, and their authenticity is not disputed. Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006). "Consideration of a document attached to a motion to dismiss ordinarily is permitted only where the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015). The court also may properly take judicial notice of matters of public record in evaluating a Rule 12(b)(6) motion. Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). "Under this exception, courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the

5

complaint." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013) (quoting

Papasan v. Allain, 478 U.S. 265, 283 (1986)).

B.      Analysis

        1.      Motion to Strike

        Out of the six documents plaintiffs have moved to strike, exhibits B,C, E, F, G, and H, none

are referred to in the complaint or otherwise "integral to and explicitly relied upon in the instant

case," but instead raise factual issues beyond those in the complaint. Phillips v. LCI Int'l, Inc., 190

F.3d 609, 618 (4th Cir. 1999); Blankenship, 471 F.3d 526 n. 1; Zak 780 F.3d 597. Accordingly, the

court may not consider the exhibits under this rule without converting the motion to one for

summary judgment. However, defendant has suggested that the court may take judicial notice of

the exhibits as 'matters of a public record.' The court therefore turns to the law surrounding judicial

notice.

        The Fourth Circuit has held "[u]nder Federal Rule of Evidence 201, courts at any stage of

a proceeding may 'judicially notice a fact that is not subject to reasonable dispute,' provided that

the fact is 'generally known within the court's territorial jurisdiction' or 'can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned,' though the

'court must construe such facts in the light most favorable to the plaintiff.'" Zak, 780 F.3d

597(quoting Clatterbuck, 708 F.3d at 557). This is a "narrow exception" to the principle barring

extrinsic evidence, and whether a fact properly is the subject of judicial notice depends on the use

to which it is put. Clatterbuck 708 F.3d at 557-558.

        Defendant urges that the court "consider" these exhibits through judicial notice, and that the

disputed documents are admissible under a "public record exception" to the bar against extrinsic

6

evidence. (DE 24 at 2). This argument is developed from language in Hall v. Virginia, in which the Fourth Circuit took judicial notice of "items in the public record." 385 F.3d 421, 424 n.3 (4th Cir. 2004). Thus, defendant asks the court to take judicial notice of the exhibits, as, according to defendant, they are "public records" in that they are "documents available in the public record" and "all [of these public records] are available from government sources, and are thus generally known within the Court's territorial jurisdiction." (DE 24 at 3).

Rule 201 governs whether the court takes judicial notice of facts, not the admittance of documents wholesale. Fed. R. Evid. 201(e). Therefore, where the Fourth Circuit has referred to "items in the public record" or "matters of public record" this refers to *facts* that are a matter of public record, not to all documents made publically available. Hall, 385 F.3d at 424 n.3; Sec. of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). This is the intended function of Rule 201, which allows the court to "judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction", a standard congruent with the court's understanding of "facts of public record." Fed. R. Evid. 201(e). This understanding is supported by Hall, wherein that court took judicial notice of specific facts on voting-age statistics, which facts were publically disseminated by the Virginia Division of Legislative Services website, and which the court referred to as "items of public record." 385 F.3d at 424 n.3; see also Papasan v. Allain, 478 U.S. 265, 283 (1986) ("these facts and relevant facts obtained from the public record . . .").

While the "public record exception" allows a court to consider "'relevant facts obtained from the public record,'" on a motion to dismiss, the court may only do so if "these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint."

7

Clatterbuck 708 F.3d at 557 (quoting Papasan, 478 U.S. at 283). Even where the court may judicially notice a fact as part of a public record, it must interpret those facts in the light most favorable for plaintiff. See id. This means that while the court can notice the fact of the existence of public documents, and other facts of public record, it may not use judicial notice to draw inferences from the contents of such documents, especially where those inferences are hostile to plaintiff. See id.

Here, the exhibits which plaintiff has moved to strike are letters, memos, press releases, administrative orders, and judicial documents from which defendant asks the court to draw conclusions and make inferences about ongoing EPA activity not discussed in the complaint. The information the defendant asks the court to consider is neither a fact, nor construed in the light most favorable to plaintiff. See Clatterbuck 558 F.3d at 557. Accordingly, judicial notice of such information is not warranted based on the present record. See id.

In the alternative, defendant asserts, with respect to all of the contested documents except for Exhibit H, they are subject to judicial notice as "the accuracy may be readily determined given the source, which either originates from a government entity or is published in furtherance of the respective government entity." (DE 24 at 3). The court is unconvinced by the argument that a document will necessarily be accurate and factual simply because it originates with a government agency. See Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage District, 382 F.3d 743, 760 (7th Cir. 2004); see also Clatterbuck, 708 F.3d 549. While the origin of these documents with a government agency may support the authenticity and therefore the fact of existence of those documents, it does not necessarily mean that the accuracy of the contents therein is beyond reasonable dispute. See id. Moreover, this case is distinguishable from Hall and Papasan, because those cases involved judicial notice of statistical facts, whereas in this instance, the court is being

8

asked to draw inferences from less reliably objective documents.  See Hall, 385 F.3d 42; Papasan, 478 U.S. 265; Milwaukee's Rivers, 382 F.3d at 760.

Finally, defendant asserts that Exhibit H should be subject to judicial notice as a "matter of a court of record."  Exhibit H is a complaint filed by several parties, including a plaintiff in the instant case, Humane Society of the United States, in a suit in federal court in the District of Columbia.  (DE 15-8); Environmental Integrity Project et al. v. U.S. Environmental Protection Agency, Case No. 15-cv-139 (D.D.C. Jan 28, 2015).  "There is an important distinction between taking judicial notice of documents filed in other courts and using judicial notice to bind a party to the truth of the matters asserted in the court filings."  Veterans Constructors, Inc. v. Beeler Barney and Associates Masonry Contractors, Inc., Case No. 2:13-CV-64-Fl, 2014 WL 4199238*3 (E.D.N.C. 2014).

 In sum, the court may take judicial notice of Exhibits B, C, E, F, G, and H for the fact of their existence but not for their contents.

2.      Motion to Dismiss

Defendant argues that plaintiffs' suit should be dismissed for failure to state a claim, as it is barred by the diligent prosecution limitation on citizen suits under EPCRA.  Defendant argues first that where a diligent prosecution for EPCRA violations has already resulted in a consent decree, subsequent citizen suits are barred.  Second, defendant argues, that ongoing efforts related to the consent decree also bar the citizen suit.

EPCRA bars citizen suits "against an owner or operator of a facility if the Administrator has commenced and is diligently pursuing an administrative order or civil action to enforce the

9

requirement concerned or to impose a civil penalty under this Act with respect to the violation of the requirement." 42 U.S.C. § 11046(e).

While there exists limited jurisprudence on the function of the "diligent pursuit" bar to EPCRA citizen suits, similar provisions with similar language exist in other environmental statutes, and have received considerably more judicial attention. One such is the diligent prosecution bar to citizen suits in the Clean Water Act ("CWA"), which states "no action may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States . . ." 33 U.S.C. § 1365(b)(1)(B).

Under the CWA, "courts have construed the diligent prosecution bar narrowly to prevent violators from escaping liability." Cape Fear River Watch, Inc. v. Duke Energy Progress, Inc., 25 F.Supp.3d 798, 811 (E.D.N.C. 2014). Agency enforcement action must have been instituted before the citizen suit is brought. Long Island Soundkeeper Fund, Inc. v. New York City Dep't of Envtl. Protection, 27 F. Supp. 2d 380 (E.D.N.Y. 1998); Sierra Club v. Hundai America, Inc., 23 F. Supp. 2d 1177 (D. Or. 1997); Mass Pub Int. Research v. ICI Americas Inc., 777 F. Supp. 1032, 1036 (D. Mass. 1991).

However, unlike the CWA provision, EPCRA explicitly bars citizen suits where there is an ongoing administrative action. See 42 U.S.C. § 11046 (e) ("no action may be commenced . . . if the Administrator has commenced and is diligently pursuing an administrative order or civil action to enforce the requirement concerned or to impose a civil penalty . . ."); Cf. Washington Pub. Interest Research Group v. Pendleton Woolen Mills, 11 F.3d 883, 886 (9th Cir. 1993) (finding that administrative orders did not bar citizen suits under the CWA citizen suit provision). While CWA

10

diligent prosecution cases may shed light on the diligent pursuit limitation in EPCRA, where the language of EPCRA is different, a different analysis may be necessary.

Generally, where a violation is being diligently prosecuted, a citizen suit for this violation may not be commenced. See Piney Run Preservation Ass'n v. The Cty. Com'rs of Carroll Cty, MD, 523 F.3d 453 (4th Cir. 2008) (holding under the CWA that commencement of a suit for violation of a permit is barred where there is ongoing prosecution for violation of that permit). Agencies receive great deference in whether an action is sufficiently diligent, even where plaintiffs assert the action is not sufficiently aggressive to prevent future violations. Id. (appellants unsuccessfully argued that a past consent order that provided for an ongoing schedule of compliance with reduced penalties was not "diligent prosecution."). Agency action may be diligent even where it expects that compliance will not be immediate, such as where "a remedial order set[s] out a detailed schedule of compliance designed to cure the identified violation of the act." Id. at 459 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 318 (1982). Thus, even where violations are ongoing and occur after the order has occurred, an order may still constitute diligent pursuit of enforcement where there is some sort of ongoing action and schedule of compliance designed to cure the identified violation. See id.

Courts have distinguished between whether an action qualifies as diligent prosecution for old violations, and whether that action qualifies as diligent prosecution for violations that have occurred since then. The Third Circuit has stated that the inquiry of the citizen suit bar is whether the corrective action already taken by the government "seeks to remedy *the same violations* as duplicative civilian action." Group Against Smog and Pollution, Inc. v. Shenango Inc., 810 F.3d 116 at 128 (3rd Cir. 2016) (emphasis added) (quoting N. & S. Rivers Watershed Ass'n, Inc. v. Town of

Scituate, 949 F.2d 552, 556 (1st Cir. 1991)).  Consequently, an older agreement will not necessarily

bar commencement of a citizen suit for subsequent violations, especially where there is no ongoing

work from the older consent decree.  See Milwaukee's Rivers, 382 F.3d at 752.  For example, the

Seventh Circuit noted in Milwaukee's Rivers:

> No one disputes (or could dispute) that the 1976 litigation in Dane County and the
> resulting 1977 Stipulation occurred or were commenced before the plaintiffs' suit
> was filed nearly 25 years later. However, whether these actions also qualify as a
> diligent prosecution of violations that occurred after all work contemplated under the
> 1977 Stipulation had been completed is another matter.

 Id.

Even where  not all of the work contemplated has completed, some courts have held that this

will not necessarily bar a citizen suit.  The Fifth Circuit has utilized, following the Second and

Eighth Circuits, a "realistic prospect" test where "if a citizen suit plaintiff demonstrates that there

is a realistic prospect that the violations will continue notwithstanding the government-backed

consent decree, then a less-than-diligent prosecution might have been shown."  Environmental

Conservation Org. v. City of Dallas, 529 F.3d 519, 528-529 (5th Cir. 2008); Atl. States Legal

Found., Inc. v. Eastman Kodak Co., 933 F.2d 124, 127 (2d Cir. 1991); Comfort Lake Ass'n v. Dresel

Contracting, Inc., 138 F.3d 351, 355 (8th Cir. 1998).  These cases, contemplated as a whole, hold

that an already paid penalty as part of settlement or consent decree will itself not suffice as "diligent

pursuit" for subsequent violations.  See id.  However, the diligent pursuit requirement contemplates

both "penalties" and "enforcement", and such a settlement may result in ongoing action which,

while in response to earlier violations, could ultimately enforce and cure subsequent violations as

well.  See id.  Thus, if the government is engaged in a course of action, resulting from a prior

settlement or consent decree, which is intended to ultimately enforce the EPCRA requirement, that

12

may meet the requirements of "diligent pursuit." See id. Whether an action would ultimately enforce and cure subsequent violations is a question in which the Administration receives great deference, but it does require some sort of activity. See id; see also Piney Run, 523 F.3d at 459, 460.

Here, plaintiffs do not claim merely a lack of "diligent prosecution" of past violations. Instead, plaintiffs contend that there are violations that occurred several years after the Shellbank Agreement, and are therefore unaddressed by it. While defendant refers to the violations in the present complaint as the same type of violations that the Shellbank Agreement is attempting to cure, plaintiffs have referred to releases occurring from 2011 to the present day, and as such argues that they are distinct from those addressed by the Shellbank Agreement. (¶¶ 85-87, DE 1). Viewed in the light most favorable to plaintiffs, there is an absence of diligent prosecution for these violations. However, as the court has discussed above, an administrative action such as a consent decree can bar subsequent violations, if the consent decree has created and is working along a schedule of compliance intended to cure this violation.

While a consent decree may in some circumstances bar suit for subsequent violations, plaintiffs have alleged that while a consent decree exists, violations have occurred since the Shellbank Agreement was ratified. Although this may not be sufficient to defeat the presumption of diligent pursuit on its own, plaintiffs have additionally alleged that the Administrative actions, contemplated in the Shellbank Agreement, to enforce the notification requirement have not occurred. See Compl. at ¶¶ 68, 69 (DE 1). Viewed in the light most favorable to plaintiffs as alleged in the complaint, such lack of ongoing action provides a basis to overcome a defense of "diligent pursuit."

Defendant argues that additional ongoing actions by the EPA towards the development of Emissions Estimation Methodologies demonstrate ongoing action that would support a claim of

diligent enforcement.  The argument relies, however, on the content of exhibits that are not subject

to consideration by the court at this time.  On the facts properly before the court, considered as true

and in the light most favorable to plaintiff, the motion to dismiss must be denied.

## CONCLUSION

Based on the foregoing, the plaintiffs' motion to strike is GRANTED.  Defendant's motion

to dismiss for failure to state a claim is DENIED.

SO ORDERED, this the 17th day of June, 2016.


_____
LOUISE W. FLANAGAN
United States District Judge